**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MANUEL R. MAWAD-MELÉNDEZ, HIS WIFE ROSARIO JOSEFINA BUDET-GUEITS AND THE CONJUGAL PARTNERSHIP FORMED BETWEEN THEM,<br><br>Plaintiffs,<br><br>v.<br><br>MOLINOS DE PUERTO RICO, LLC<br><br>Defendant. | CIVIL NO. _____<br><br>AGE DISCRIMINATION (ADEA and LAW 100); PUERTO RICO LAW 80 (UNJUST DISMISSAL)<br><br>JURY DEMAND |

**COMPLAINT**

Plaintiffs Manuel R. Mawad-Meléndez ("Plaintiff" or "Mr. Mawad"), his wife Rosario Josefina Budet-Gueits and the conjugal partnership between them ("Plaintiffs"), by and through the undersigned counsel, file this civil action Complaint and Jury Demand ("Complaint") against Defendant Molinos de Puerto Rico, LLC ("Defendant" or "Molinos" or "the company"). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and on information and belief as to the acts of others.

**INTRODUCTION**

1.   This civil action challenges Defendant's illegal and unlawful employment termination of Mr. Mawad based on age discrimination.

2.   This civil action also challenges Mr. Mawad's illegal and unlawful employment termination in violation of Puerto Rico Law 80 of May 30, 1976, as amended as well as in violation of Article 1536 of the Puerto Rico Civil Code.

3. Defendant acted arbitrarily and illegally towards Mr. Mawad under the pretext that he had violated company rules and a Code of Conduct when in fact the alleged violations did not occur as alleged by Defendant and were motivated by anti-age animus.

4. In fact, other younger employees that incurred in the same allegedly improper conduct that was imputed to Mr. Mawad were not terminated but retained in the company. As a matter of fact, one of those younger employees was chosen to replace Mr. Mawad even when that younger employee lacked similar work experience as Mr. Mawad's in the dispatch area.

5. Plaintiffs bring this action seeking Mr. Mawad's reinstatement to his position at Molinos, as well as back pay, liquidated damages and attorney fees. Plaintiff also seek relief via supplemental jurisdiction for state law claims under Law 100 of June 30, 1959 ("Law 100") for age discrimination under Puerto Rico's anti-discrimination statute; for unjust discharge under Law 80 of May30, 1976, as amended ("Law 80"), and in violation of Article 1536 of the Puerto Rico Civil Code.

**PARTIES**

6. Plaintiff Manuel R. Mawad-Meléndez is a 51-year-old resident of Carolina, Puerto Rico, who was employed by Molinos as clerk in the dispatch area for 9 years.

7. Plaintiff Rosario Josefina Budet-Gueits has been married to Mr. Mawad for the past 13 years and together are a conjugal partnership, pursuant to Puerto Rico Law.

8. Molinos de Puerto Rico, LLC is a for profit corporation authorized to do business in Puerto Rico in the food, flour, and other grain mill products. Its principal place of business is located in San Juan, Puerto Rico, at the following address: Km. 1.1 Carr. 165, Sabana Industrial Park, Guaynabo, Puerto Rico 00962, telephone number (787) 793-1111. Molinos de Puerto Rico,

LLC has more than 50 employees across all its locations and generates close to $50 million in sales (USD).

## JURISDICTION AND VENUE

9. Because this case is brought under the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29 U.S.C. § 621 *et seq.*, this Court has federal question jurisdiction under 28 U.S.C §1331 and 28 U.S.C. § 1343(4).

10. Supplemental jurisdiction is sought under 28 U.S.C. §1367(a) for state law claims under Law 100 of June 30, 1959 ("Law 100") for age discrimination under Puerto Rico's anti-discrimination statute; under Law 80 of May 30, 1976, as amended ("Law 80").

11. Venue is proper in the District of Puerto Rico because Plaintiffs' causes of action arose within this district and all the acts and omissions giving rise to the claims in this case occurred in this District. Venue is also proper in this District because the Defendant is subject to personal jurisdiction therein by virtue of their substantial, continuous, and systematic commercial activities in this District. 28 U.S.C. §1391(b), (c).

12. Mr. Mawad exhausted his administrative remedies prior to the filing of the instant complaint. He filed a grievance with the Equal Employment Opportunity Commission ("EEOC") alleging age discrimination and a right-to-sue letter was issued on July 1, 2021.

## FACTS

13. Mr. Mawad is an unemployed 51-year-old individual who spent the last nine years of his life performing quality and committed work for this ex-employer, Molinos de Puerto Rico, LLC.

14. During his nine years of employment, Mr. Mawad worked in the dispatch area for the last four years. Title of his position at Molinos was "Plant Clerk". His last direct supervisor was Mr. Wilfredo Laureano.

15. Mr. Mawad's duties and responsibilities in the dispatch area were the following:

   a. In charge of the dispatch of rice to ensure that the quantities dispatched match the order.

   b. Approved completed orders prior to departure of the plant.

   c. Supervised employee Reynaldo Rodriguez-Lugo, who worked with the forklift used for the dispatch of rice.

   d. Received packaging materials for the whole operation (wheat and rice).

   e. In charge of inventory in warehouses numbers 3, 4, and 5.

16. Mr. Mawad always executed his duties with excellence and commitment to the company.

17. Prior to his sudden termination, during his nine years in Molinos, Mr. Mawad was never subjected to any disciplinary measures.

18. Since on or about the year 2015, Molinos switched its time-keeping payroll program from ADP to Workday. Both programs allowed employees to register from their own respective smartphones through Microsoft 360. Due to the large size of the Molinos plant, the company deemed useful and helpful to allow employees to register their work time in a more efficient, accurate way, since at times employees were faced with the difficulty of timely accurately registering their actual work time and breaks if they were performing duties in distant locations from the areas where computers or punchtime machines were located.

19. Molinos itself connected Microsoft 360 to employee emails and time management. From that program, employees were able to clock in and out and also request the use of sick leave and vacation leave. Moreover, Molinos sent employees emails and corporate tutorials on how to use the Microsoft 360 program.

20. Molinos allowed and promoted employee use of Microsoft 360 to register their time to ensure accurate recording of work time and to maintain accurate employee records.

21. Mr. Mawad used the program consistently since the year 2015 with the knowledge of his employer and supervisors.

22. Molinos never admonished Mr. Mawad for the use of Microsoft 360 to register his work time nor did they at any time prohibit or limit Mr. Mawad of its use.

23. At all times Mr. Mawad used Microsoft 360 accurately and responsibly.

24. On July 16, 2020, Mr. Mawad was suddenly called into a meeting with his supervisor, Mr. Wilfredo Laureano, the Sales Manager, Mr. Ramón Hernández, and the Human Resources Manager, Ms. Yoellie Resto-Pérez ("Ms. Resto"). In this meeting he was surprisingly and unexplainably informed that his work attendance records did not match with the security guards' logs information.

25. At the referred meeting, Mr. Mawad informed Mr. Hernández and Ms. Resto that he registered his time through Microsoft 360, and that he did not use the Workday mobile application.

26. Ms. Resto asked Mr. Mawad if he was using a mobile application called *Workday* to register his worktimes and he answered in the negative. He explained he was using Microsoft 360. Ms. Resto expressed that she was left with doubt in the meeting.

27. The following day, Mr. Mawad, through his own will and accord, visited Ms. Resto in her office to clarify that Workday can be accessed through Microsoft 360 from mobile phones. Mr. Mawad told Ms. Resto that he does not use the Workday mobile application but that he would log on to it using Microsoft 360 from his mobile phone. Microsoft 360 gives the employee access to company emails and newsletter, and also allows for the employee to register worked time. Mr. Mawad explained that, to the best of his knowledge, this was the way all the employees registered their work time.

28. Mr. Mawad reminded Ms. Resto that when Molinos installed the software, the company informed all employees that it could be accessed through individual mobile phones and that it could be used to register work time. Mr. Mawad clarified that he was unaware of any instruction or indication from the company to prohibit registering worked time through Microsoft 360.

29. In the same meeting, Mr. Mawad informed Ms. Resto that he did not understand why there would be discrepancies in his time records, since he used the program to register the end of his workday before he entered his car to leave the premises. Mr. Mawad told Ms. Resto that the security guard logs that were being used by the company to compare his entries either had incorrect information or were incomplete. Mr. Mawad explained to Ms. Resto that the security guard was not always in his work post when he left the premises. He provided the names of the two security guards that were entering information in the logs after the actual event.

30. Mr. Mawad also told Ms. Resto that he was not the only employee that used the Microsoft 360 program, and there were others that he knew used it too. In addition, Mr. Mawad said he had never been instructed to stop using the program or was ever warned that using the application was against company policies or procedures.

31. Company rules establish that employees should clock in their workplace.

32. Mr. Mawad's workplace, and his area of responsibility included the area from the "American Caribbean Trucking Company" (AMCA) office up to and including warehouse number 3. The Molinos' parking lot falls within the work area. AMCA's office is in Molinas' property and AMCA was subcontracted to move the Molinos' containers. As dispatch supervisor, Mr. Mawad would coordinate with AMCA to move the containers.

33. Mr. Mawad never acted with dishonesty or provided any false information to the company, including his manner of recording his work times through Microsoft 360.

34. On August 14, 2020, Mr. Mawad was called into a meeting with Mr. Salvador Medina, Plant Manager; Mr. Ramón Hernández, Sales Manager; Mr. Wilfredo Laureano, Dispatch Manager, and Ms. Resto, Human Resources Manager. In that meeting, Mr. Mawad was informed that the company conducted an investigation for the six-month period prior, and that the results indicated that he had registered a substantial amount of extra minutes as worked time, and consequently received more money in his paychecks than he was entitled to. In that meeting, Mr. Mawad was handed a termination letter.

35. Molinos' alleged investigation and results are pretextual reasons for terminating Mr. Mawad, who was terminated for illegal, unjustified, discriminatory reasons.

36. The investigation and results are flawed and incorrect because: (a) the numerical values used are inaccurate and incorrect; (b) the computations made are inaccurate and incorrect; (c) the data used to make the calculations and computations is flawed and inaccurate; (d) the data used to make the calculations and computations were altered and modified; (e) the data used for the investigation (security guards' logs) is unreliable and incomplete, (f) the investigation did not consider the information and explanations provided by Mr. Mawad.

37. Molinos' disciplinary action was applied inconsistently based on faulty premises and is merely a pretext for discriminatory practices towards Mr. Mawad.

38. Mr. Jayson Rivas, a co-worker at Molinos, also used the Microsoft 360 application to register his worktime.  Mr. Rivas was also "investigated."  However, Mr. Rivas was not terminated from employment at Molinos for using Microsoft 360 and for the discrepancies between his registered work time and the information contained in the security guard logs.

39. In addition, Mr. Rivas' "investigation" only included the months of June and July 2020 while Mr. Mawad's "investigation" included the months of February through August 2020.

40. Molinos intentionally and discriminatorily conducted the "investigation" in bad faith for the purpose of racking up the numbers against Mr. Mawad to try to justify an otherwise illegal employment termination.

41. Mr. Rivas is younger than Mr. Mawad.

42. Mr. Rivas replaced Mr. Mawad in his dispatch position notwithstanding the fact Mr. Rivas' prior work experience at Molinos was as "molinero" and had absolutely no prior experience in the dispatch area.

### FIRST CAUSE OF ACTION – AGE DISCRIMINATION

43. The ADEA makes it unlawful to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such an individual's age." 29 U.S.C § 623(a)(1).

44. Law 100 makes it unlawful to terminate from employment or otherwise discriminate against employees by reason of their age, among other categories.  Article 1 of Law 100, 29 L.P.R.A. sec. 146.

45.     Article 1(a) of Law 100 provides that employers who illegally discriminate against employees must pay, among other remedies, an amount equal to double the amount of damages caused to the employee.

46.     Mr. Mawad was discharged by reason of his age, that is, his age was the determinative factor in his discharge, as Molinos had no reason to terminate but for his age.

47.     Plaintiffs have established the four prongs of a *prima facie* case of age discrimination under the burden-shifting framework set forth in McDonnell Douglas Corp v. Green, 422 U.S. 792, 802-05 (1973), to wit, that: (a) Mr. Mawad was over 40 years of age at the time of his termination from employment by Molinos; (b) Mr. Mawad was terminated from employment; (c) Mr. Mawad had never been admonished or disciplined for any reason nor had he been told or informed by anyone at Molinos that he could not use Microsoft 360 to register his worktime; therefore, Mr. Mawad was meeting Molinos' legitimate performance expectations; and (d) Mr. Mawad was replaced by a younger employee.

48.     According to Molinos' procedures and investigations, both Mr. Jayson Rivas and Mr. Mawad incurred in the same violation of using Microsoft 360 to register their work time. Notwithstanding the above, only Mr. Mawad was terminated from employment and Mr. Rivas, who is younger than Mr. Mawad, was retained in employment for the purpose or replacing Mr. Mawad.

49.     Molinos' termination of Mr. Mawad's employment was illegal and discriminatory by reason of his age and in violation of the ADEA and Law 100.

50.     Molinos' illegal and discriminatory termination of Mr. Mawad's employment caused significant damages to his life, mental and emotional health.

51. Mr. Mawad's mental and emotional health was significantly impacted by Molinos' discrimination. His mental and emotional health worsened because of Molino's discrimination.

52. The termination of employment resulted in economic troubles for Mr. Mawad as he had to pay his rent and other bills resulting on the need to use his wife's savings and his own retirement savings to pay for their bills.

53. Wherefore, Mr. Mawad prays for:

   a. Compensatory damages for an amount not less than $500,000.00, pursuant to Law 100 plus statutory double penalty;

   b. Liquidated damages under federal law for an amount not less than his back pay;

   c. Back Pay;

   d. Reinstatement to employment or front pay and other equitable remedies in lieu of reinstatement;

   e. Attorney Fees;

   f. Costs.

**SECOND CAUSE OF ACTION – SEVERANCE PAY FOR UNJUST DISMISSAL**

54. Article 1 of Law 80 provides that any employee working for an employer indefinitely, that is, without pre-determined work dates, is entitled to receive severance should the employer terminate him without just cause. 29 L.P.R.A. §185a.

55. Pursuant to Article 2 of Law 80, Mr. Mawad was terminated from employment without just cause due to his age and in retaliation and is entitled to receive the payment of severance, based on the definition established in the referred statute. 29 L.P.R.A §185b.

56. Pursuant to Article 1 of Law 80, considering Mr. Mawad worked at Molinos for nine years, he is entitled to receive severance pay equivalent to three months and 18 weeks of his full compensation package at Molinos.

Wherefore, Mr. Mawad prays for the payment of severance pay compensation pursuant to Law 80.

**THIRD CAUSE OF ACTION – ARTICLE 1536 OF THE PUERTO RICO CIVIL CODE**

57. Mr. Mawad's wife, Rosario Josefina Budet-Gueits, brings forth a cause of action for emotional and mental damages as per <u>Santini Rivera v. Serv Air</u>, 137 D.P.R. 1, (1994) which states:

> *"[T]he relatives of an employee who has been a victim of [Law] 100 discriminatory treatment at the hands of his employer have a cause of action under Civil Code § 1802 to be compensated for the harm resulting from said employment discrimination."*

58. The Article 1802 to which the above citation refers to -belonging to the abolished 1930 Civil Code- is now Article 1536 of the 2020 Puerto Rico Civil Code.

59. Article 1536 of the 2020 Puerto Rico Civil Code provides that any person that acts with guilt or negligence provokes harm to another is obligated to repair it.

60. Mrs. Budet-Gueits suffered emotional distress and anguish as a consequence of the discrimination and illegal termination suffered by her husband.

61. Due to Mr. Mawad's illegal termination from employment, Mrs. Budet-Gueits was obligated to spend her savings to help support the household and to pay bills.

62. Wherefore, Mrs. Budet-Gueits and the conjugal partnership pray for compensation in an amount not less than $20,000.00 for the anguish she suffered as a consequence of Mr. Mawad's illegal termination from employment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request from this Honorable Court that it issue an award in their favor and against Defendant as follows:

a) Compensatory damages for an amount not less than $500,000 pursuant to Law 100 plus statutory double penalty;

b) Lost wages, employment benefits, and other compensation lost to Mr. Mawad as a result of Defendant's discrimination against him on the basis of his age, and prejudgment interest;

c) Liquidated damages including interest, wages, lost employment benefits, and other compensation lost to him as a result of Defendant's discrimination against him on the basis of his age;

d) Reinstatement to his job in his former position with Defendant and back pay or, in lieu of reinstatement, front pay and other equitable remedies;

e) Severance pay compensation pursuant to Law 80;

f) Compensation in an amount not less than $20,000.00 for the anguish Mrs. Budet-Gueits and the conjugal partnership suffered as a consequence of Mr. Mawad's illegal termination from employment;

g) Reasonable attorney's fees, expert witness fees, expenses and costs of this action, and

h) Such other and further relief which Plaintiffs may hereinafter request and which the Court may deem appropriate to award.

## DEMAND FOR JURY TRIAL

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues so triable in this action.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 29th day of September, 2021.

        **DTS LAW LLC**
        *Attorneys for Plaintiffs*
        221 Plaza, Suite 801
        221 Ponce de León Ave.
        San Juan, PR 00917-1804
        Telephone (787) 754-8700

        s/José A. Bagué-Soto
        USDC-PR 213205
        E-mail: jbague@dtslaw.com

        s/Myriam E. Matos-Bermúdez
        USDC-PR 208702
        E-mail: mmatos@dtslaw.com